**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THERESA D. LARA, | No. C 11-0607 RS |
| Plaintiff, | |
| v. | **ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** |
| COUNTY OF SANTA CLARA, et al., | |
| Defendants. | |

## I. INTRODUCTION

California case and statutory law is settled that peace officers carrying out an eviction may not proceed against a person residing on the premises who is not named in the writ of execution, if that person asserts a right of possession. Plaintiff Theresa Lara brought this action in alleging claims under 42 U.S.C. §1983 and state law, contending that Santa Clara County Sheriff's deputies violated that principle when they found her residing as a subtenant in an apartment leased by her sister and brother-in-law, and advised her that she must vacate the premises pursuant to an unlawful detainer judgment. Because the undisputed facts demonstrate that Lara gave the deputies no reason to presume she was asserting a right of possession, her legal rights were not violated, and her claims in this action fail. The motion for summary judgment brought by Santa Clara County and the

individual defendants (collectively "the County") will therefore be granted, and Lara's cross motion denied.

## II. BACKGROUND

In May of 2009, Elizabeth and Freddy Valdez entered into a written lease for a three bedroom apartment in a building in Campbell, California. Elizabeth's sister, plaintiff Lara, moved in with the Valdezes, sharing a bedroom with their children. The arrangement apparently was somewhat informal, and not intended to be permanent. There is no dispute that Lara was never added to the lease. She paid $450 monthly (approximately one-third the total rent) directly to her sister.

In support of its motion, the County submits declarations from the property managers asserting they had no knowledge Lara was occupying the apartment at the time of the eviction. In response, Lara offers a declaration describing her interactions with the property managers from which it could be inferred that they knew or should have known she was effectively living there. The County objects to that portion of Lara's declaration on grounds of relevance. While ultimately the County is correct that any dispute regarding whether the property managers knew or should have known Lara was residing in the apartment is immaterial to the issues presented by these motions, Lara cannot be faulted for responding to factual assertions initially made in the County's moving paper, as if they were significant.[1]

The Valdezes failed to pay rent in November and December of 2009, resulting in an unlawful detainer judgment entered against them on December 10, 2009. The following day, the County posted the Notice to Vacate, Writ of Possession and a blank Claim of Right to Possession form on the apartment door, and mailed copies to the Valdezes. The Notice to Vacate indicated that the eviction date was December 18, 2009. While Lara admits she was living at the apartment and

---

[1] The County's other evidentiary objections, submitted in a separate document in violation of Civil Local Rule 7-3, are largely boilerplate and include many that border on the frivolous. For example, the County objects that Lara lacks personal knowledge to describe the appearance of the Sheriff's deputies, despite the fact that she plainly is declaring what she saw and perceived. To the extent any of the objections may be well taken on one or more technical points, they do not materially affect the analysis.

2

present during most of this time period, she contends she never saw the posted notice or the mailed copies.

On December 15th, Lara received a text message from her sister advising her that, "they are making us move out." When Lara called her sister, she was told they all had to vacate the apartment by the 18th. Lara, who had worked as a paralegal and had prior personal experience with eviction proceedings, assumed that the process was not quite as far along—i.e., that only a notice to pay rent or quit had been posted. Her sister also mentioned an unpaid PG&E bill, so Lara believed that perhaps the only issue was a failure to reimburse the landlord for utilities incurred when they first moved in, prior to switching the billing to the Valdezes' own name. Lara asked the Valdezes to show her any paperwork they had received, but they never did so. Lara also contends she searched the superior court website, but was unable to locate any pending proceeding against the Valdezes.

On December 17th, Lara contacted her attorney, who then sent a letter to the property owners informing them that Lara had heard about an unlawful detainer action but had not been served with any papers, and that any eviction from the premises would be unlawful. Neither Lara nor her counsel contacted the court or the sheriff's department. On that same day, Lara watched her sister and brother-in-law pack up their things and move out of the apartment. She stayed, however, still believing that there was at most some small amount owing that she could pay, and/or that she could not be evicted in any event, because she had not been served.

On Friday, December 18, 2009, defendant Deputies Moreno and Craig called the property managers to inform them they were headed to the apartment to carry out the eviction. After arriving on site, they met with the property managers and then went to the apartment, where they informed Lara that she had to vacate the premises because of the unlawful detainer judgment related to nonpayment of rent. Lara told the deputies that this was the first time she was learning that the eviction was related to nonpayment of rent and that she had not been served with any legal process related to any unlawful detainer action.

Lara asked the deputies for a copy of any court order or other document requiring her to vacate the apartment. In response, the deputies posted a copy of the Notice to Vacate outside the door of the apartment. Lara testified that the deputies were cordial.

After reading the Notice to Vacate, Lara asked the deputies if she could call her attorney and they said "yes". Lara placed a telephone call to her counsel. The deputies spoke with the property managers to inform them that Lara was still occupying the apartment.

The property managers and the deputies then went back to the apartment to speak with Lara. The deputies stood back as the property managers and Lara conversed. The County insists that Lara reached a voluntary agreement with the property managers to move out, once she learned that it was not a minor matter and that two months' rent was past due and owing. The managers offered that if Lara was unable to complete her move out by 5:00 p.m. that day, she could return later to retrieve anything left behind. Lara ultimately took advantage of that offer—although she left the premises by 5:00 that day, she returned the following week to pick up additional belongings. Lara insists, however, that her departure was *not* voluntary, but was the direct result of the armed deputies telling her that she must leave. Specifically, Lara declares, "[o]ne of said sheriff's deputies told Plaintiff that not having been served with court papers and/or the absence of Plaintiff's name on court papers was/were not a fact/facts which would cause said defendant sheriff's deputies to rescind or withdraw their order that Plaintiff vacate apartment 3 at the Shamrock Drive Property."

The County's description of the conclusion of the incident also is not entirely consistent with its argument that Lara departed voluntarily. The County states, "[a]fter the Property Managers and Plaintiff had reached an agreement, the Deputies assisted the Property Managers in changing the locks *and completing the eviction* and then left." (Emphasis added.) While the County may contend that the eviction was only being "completed" with respect to the Valdezes, and in the sense that possession of the property was being returned to the owners, Lara's departure occurred during, and as part of, an ongoing eviction proceeding, regardless of the extent to which she "agreed" to vacate the premises.

### III. LEGAL STANDARD

Summary judgment is proper "if the pleadings and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The purpose of summary

4

judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings and admissions on file, together with the affidavits, if any which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323 (citations and internal quotation marks omitted). If it meets this burden, the moving party is then entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of the case with respect to which he bears the burden of proof at trial. *Id.* at 322-23.

The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party cannot defeat the moving party's properly supported motion for summary judgment simply by alleging some factual dispute between the parties. To preclude the entry of summary judgment, the non-moving party must bring forth material facts, *i.e.*, "facts that might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 588 (1986).

The court must draw all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight to be accorded particular evidence. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496 (1991) (*citing Anderson*, 477 U.S. at 255); *Matsushita*, 475 U.S. at 588 (1986). It is the court's responsibility "to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *T.W. Elec. Service v. Pacific Elec. Contractors*, 809 F.2d 626, 631 (9th Cir. 1987). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

## IV.  DISCUSSION

In Lara's view, this case begins and ends with *Arrieta v. Mahon*, 31 Cal.3d 381 (1982), which she insists is directly on point and compels the conclusion that her constitutional rights were violated. *Arrieta* was an action for declaratory and injunctive relief brought to challenge the policy of the Los Angeles County Marshal, "when enforcing a writ of execution after an unlawful detainer judgment, to evict all occupants of the premises, whether or not they were named in the writ." *Id*. at 383.  The trial court concluded, and the California Supreme court affirmed, that "the eviction of any adults not named in the writ who claim a right to possession of the disputed premises that arose before the unlawful detainer action was commenced, violated the rights of such individuals to procedural due process under the Fourteenth Amendment of the United States Constitution and article I, section 7, subdivision (a) of the California Constitution." *Id*. at 383-84.

Although the California Supreme Court's conclusion as to what the federal Constitution requires is not strictly binding in this forum, the basic principle of *Arrieta* is sound, and the County does not dispute that tenants unnamed in an unlawful detainer have due process rights. Additionally, the California legislature effectively codified the holding in *Arrieta* by enacting Code of Civil Procedure §1174.3, which provides a formal procedure for making a claim of right of possession.  A California Judicial Council form has been promulgated for making such claims.  As noted, a blank copy of that form was posted on the apartment door with the eviction notice, although Lara contends she saw none of the posted material.

While not challenging the general rule of *Arrieta* or §1174.3, the County argues it is entitled to summary judgment finding no constitutional violation here for two basic reasons:


1. *Lara's "agreement" to move out*

As noted, the County contends that Lara was not evicted at all, but that she voluntarily moved out once she learned how much rent was actually past due.  This issue would not be subject to resolution on summary judgment.  There is evidence from which a trier of fact could reasonably conclude that Lara vacated the apartment as a direct result of the deputies' presence and statements that she was legally obligated to do so.

6

### 2. *Lara's failure to submit a formal claim of possession*

The County argues it is undisputed that Lara had actual notice of the pending eviction, but never filed with the court, or gave to the deputies, a written claim of right of possession. The County relies on *Cardenas v. Noren*, 235 Cal. App. 3d 1344 (1991) for the proposition that unless a tenant utilizes the procedures set out in §1174.3, the sheriff is entitled to evict. *Cardenas,* however, involved an unusual factual and procedural situation where a plaintiff was attempting to obtain a writ of mandate to compel a sheriff to *restore* possession of the premises. *Id*. at 1347. While the court stated that the plaintiff could have protected himself in the first instance by following the procedures of §1174.3, the holding of *Cardenas* was merely that, "[e]ven if the sheriff had improperly evicted appellant, he was not under a present, ministerial duty to restore appellant to possession." *Id*. at 1350. *Cardenas* thus does not support the notion that a sheriff is always entitled to evict persons unnamed in a writ of possession unless they have strictly complied with §1174.3.

Lara argues that, in the circumstances here, she had no ability to comply with §1174.3, because she could not have filled out and filed the requisite Judicial Council form when she did not know the case name and number, and indeed could not even confirm a case actually existed. The fact that she might not been able to file the document with the court, however, does not explain why she could not have handed a claim form, with case information left blank, to the deputies, especially since she had consulted an attorney the day before.

Nevertheless, to the extent the County contends it is entitled to judgment simply because Lara did not submit a written claim of exemption, either partially or completely filled out, the argument is not persuasive. The due process issue identified in *Arietta* requires a meaningful opportunity to be heard. The injunction entered in *Arietta* required the marshal to give notice that a person claiming a right of possession need only "contact" the marshal's office. As the court stated, "[o]nce the marshal discovers that a person not named in the writ of execution claims a right to possession accruing before the unlawful detainer proceeding commenced, he may not evict that person without a further order of court." *Arrieta*, 31 Cal.3d at 390.

The fact that the California Legislature subsequently enacted a procedure to *facilitate* the making of claims for possession, does not somehow *limit* constitutional rights. If sheriffs encounter

7

a person in possession of the premises who is not named in the writ, and that person appears to be asserting a right to possession, it is no defense that the person has not already filled out and filed the appropriate Judicial Council form. Although in this instance Lara had actual notice prior to the sheriffs' arrival that an eviction order *might* exist, an unnamed party often may have no prior notice. To require persons to have already filed, or at least already be in possession of, a filled out Judicial Council form when the sheriffs show up for an eviction is not due process.

That said, nothing in *Arrieta,* §1174.3, or general principles of due process, give rise to any duty on the part of peace officers carrying out an eviction to provide legal advice, or to make other affirmative efforts to assist persons in asserting a claim of a right to possession. The undisputed facts here show that the deputies were "cordial," gave Lara the opportunity to seek legal advice from her attorney, and allowed her to discuss the situation with the apartment managers. There is no evidence that Lara ever said anything to the deputies that they should have reasonably construed as a claim of a right to possession. Even assuming that from her subjective point of view, Lara's agreement to move out was made under duress, the deputies had no reason to think anything other than that the situation had been amicably resolved after Laura spoke both with her legal counsel and with management, and had come to a full understanding of both the factual circumstances and her legal rights.

Imposing liability under these undisputed circumstances would require placing on peace officers an obligation to determine what rights a person *might* be able to claim, and to encourage him or her to do so, regardless of whether the person is actually asserting, or desires to assert, those rights. Officers would be inhibited from attempting to allow peaceful and amicable resolutions to be negotiated among the affected parties. Neither due process nor any other principle of law supports such a result. Accordingly, Lara cannot show her rights were violated, defendants' motion for summary judgment must be granted, and her cross-motion for summary judgment must be denied.[2]

---

[2] Lara's state law claims for negligence and "wrongful eviction" are subject to summary judgment for the additional and independent reason that she failed to file a timely pre-suit tort claim against the County. Lara's opposition effectively concedes this point, by arguing only that the failure to file a tort claim does not bar recovery under 42 U.S.C.§ 1983. Lara's Bane Act claim, Cal. Civil Code §52.1, also fails in any event. Even assuming the deputies somehow violated Lara's constitutional

rights, there is no evidence they did so through "threats, intimidation, or coercion" within the meaning of the Bane Act.

## V. CONCLUSION

Defendants' motion for summary judgment is granted and plaintiffs' motion for summary judgment is denied. A separate judgment will issue.

IT IS SO ORDERED.

Dated: 8/24/12

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE